IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                Plaintiff-Respondent,

v.                                           CR 02-0154 JC/LAM

SUSANNA FORD,

                Defendant-Movant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on *Susanna Ford's Motion for Certificate of Innocence* (hereinafter, "*Motion for Certificate of Innocence*") (*Doc. 42*), filed on May 7, 2008. The Court has considered the motion, Ford's brief in support of the motion (*Doc. 43*), the United States of America's response to the motion (*Doc. 51*), Ford's reply in support of the motion (*Doc. 54*), the evidence and argument presented at a hearing held on the motion on October 31, 2008, and relevant law. For the reasons set forth below, the Court recommends that the motion be **DENIED**.

### *Background*

On October 2, 2002, Ford was convicted in this case pursuant to a guilty plea of the crime of re-entry of a deported alien previously convicted of an aggravated felony. *See **Judgment in a***

---

[1] **Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within ten (10) days after being served with a copy of the objections.**

*Criminal Case* (*Doc. 22*).[2]  Ford's "offense concluded" date was October 31, 2001.  *Id.* at 1.  She

was sentenced to a term of imprisonment of fifty-seven months and a term of unsupervised release

of two years.  *Id.* at 2-3.  On February 7, 2008, after Ford was released from federal custody, the

Court vacated and set aside her conviction, retroactive to October 2, 2002.  *See **Order Vacating**

***Judgment of Conviction*** (*Doc. 39*) at 2.  The Court vacated and set aside her conviction in

connection with its decision to grant her ***Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside,***

***or Correct Sentence by a Person in Federal Custody*** (*Doc. 31*), which the Court construed as a

petition for a writ of error coram nobis because Ford was no longer in custody.  *Id.* at 2.

    The Court granted Ford's petition for a writ of error coram nobis based on its finding that

Ford had demonstrated "circumstances compelling such action to achieve justice."  *See*

***Order Vacating Judgment of Conviction*** (*Doc. 39*) at 2.  In her ***Motion Pursuant to***

***28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody***

(*Doc. 31*), Ford argued that she was entitled to post-conviction relief because she had acquired

United States citizenship through derivation, subsequent to her conviction for illegal re-entry, which

citizenship was awarded retroactive to March 9, 1994, making her a United States citizen on the date

of her offense.  Ford's retroactive award of derivative citizenship is evidenced by a certificate of

citizenship, issued on January 25, 2006, which states that she became a United States citizen on

March 9, 1994.  *See **Brief in Support of Susanna Ford's Motion for Certificate of Innocence***

(*Doc. 43*), Exhibit 2 (*Doc. 43-3*).

    In her ***Motion for Certificate of Innocence*** (*Doc. 42*) and supporting brief (*Doc. 43*), Ford

asks the Court to issue her a certificate of innocence pursuant to 28 U.S.C. § 2513, so she can pursue

---

[2]The relevant criminal statute is 8 U.S.C. § 1326(b)(2).

a claim for damages against the United States under 28 U.S.C. § 1495 for unjust conviction and imprisonment.  Any person filing suit under 28 U.S.C. § 1495 whose conviction has been reversed or set aside, must first obtain a certificate of innocence from the court that reversed or set aside the conviction.  28 U.S.C. § 2513(a) and (b).

### Applicable Law

28 U.S.C. § 1495 gives the United States Court of Federal Claims "jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned."  As a prerequisite to filing suit under § 1495, Ford must allege and prove that: (1) "[her] conviction has been reversed or set aside on the ground that [she] is not guilty of the offense of which [she] was convicted, . . . as appears from the record or certificate of the court setting aside or reversing such conviction[;]" (2) "[she] did not commit any of the acts charged or [her] acts, deed, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia[;]" and (3) "[she] did not by misconduct or neglect cause or bring about [her] own prosecution."  28 U.S.C. § 2513(a) (1) and (2).  Proof of these facts must be "by a certificate of the court . . . wherein such facts are alleged to appear, and other evidence thereof shall not be received."  28 U.S.C. § 2513(b).

A certificate issued pursuant to 28 U.S.C. § 2513 is known as a "certificate of innocence." A certificate of innocence is a civil remedy.  *See United States v. Brunner*, 200 F. 2d 276, 279 (6th Cir. 1952).  It is issued when a movant complies with the requirements of § 2513, and the requirements of the statute are strictly construed.  *See Vincin v. United States*, 468 F.2d 930, 933 (Ct. Cl. 1972); *United States v. Keegan*, 71 F. Supp. 623, 636 (S.D.N.Y. 1947).  The burden is on

Ford to show that she is entitled to a certificate of innocence. *United States v. Keegan*, 71 F. Supp. at 636.

## *Discussion*

It is clear from the record that Ford has satisfied the requirements of § 2513(a)(1), given that the Court, upon granting her petition for a writ of error coram nobis, vacated and set aside her conviction in this case in its ***Order Vacating Judgment of Conviction*** (*Doc. 39*) on the ground that she was not guilty of the offense of illegal re-entry under 8 U.S.C. § 1326 due to her award of derivative United States citizenship retroactive to March 9, 1994. It is also clear from the record that Ford has partially satisfied the requirements of § 2513(a)(2) because the acts she was charged with did not constitute an offense against the United States because she was, at all relevant times, a citizen of the United States by virtue of her retroactive award of citizenship. However, the Court finds that Ford has failed to demonstrate that she "did not by misconduct or neglect cause or bring about [her] own prosecution" as required by 28 U.S.C. § 2513(a)(2).

The record indicates that Ford's own conduct contributed significantly to her prosecution. In a sworn affidavit filed in support of her motion for certificate of innocence, Ford stated, "I knew that my adoptive mother applied for my citizenship when I was approximately 11 years old. I believed that I was granted citizenship pursuant to that application even though I did not receive proof until I obtained a Certificate of Citizenship in 2006. I believed that I was an American citizen long before 1999." ***Reply in Support of Susanna Ford's Motion for Certificate of Innocence*** (*Doc. 54*), unmarked exhibit (*Doc. 54-3*) at ¶ 2. Yet, the record indicates that during her removal proceedings in the immigration court in 1999, Ford did not apply for relief from removal and was ordered removed from the United States to Mexico based on her own admissions. *See*

4

***United States' Response Opposing Defendant's Motion for Certificate of Innocence*** (*Doc. 51*), unmarked exhibit (*Doc. 51-2*) at 1.[3]  The record further indicates that when Ford was detained by the United States Border Patrol on October 31, 2001, after re-entering the United States, she signed a sworn affidavit stating that she was a citizen of Mexico and stating "no" in response to the question, "Is there anything else you wish to say in this statement?"  *See* ***United States' Response Opposing Defendant's Motion for Certificate of Innocence*** (*Doc. 51*), unmarked exhibit (*Doc. 51-3*) at 1.[4]  Moreover, at her plea hearing on June 10, 2002, before United States Magistrate Judge Karen B. Molzen, Ford pleaded guilty to the crime of illegal re-entry and testified, under oath and upon repeated questioning by Judge Molzen, that she was a native and citizen of Mexico.  *See* Transcript of Felony Plea Proceedings as to Susanna Ford on June 10, 2002 (*Doc. 60*) at pages 12-13.[5]

The Court does not find to be credible Ford's statements in a sworn affidavit that she "always told government officials that [she] was an American citizen" and that she is "sure [she] told any immigration official in Alamagordo [sic], New Mexico in 2001 that [she] was an American citizen."  *See* ***Reply in Support of Susanna Ford's Motion for Certificate of Innocence*** (*Doc. 54*), unmarked

---

[3]Ford waived the right to appeal the removal order entered by the immigration judge and she "made no application for relief from removal."  *See* ***United States' Response Opposing Defendant's Motion for Certificate of Innocence*** (*Doc. 51*), unmarked exhibit (*Doc. 51-2*) at 1.

[4]In an affidavit attached to the reply in support of her motion, Ford states in regard to her affidavit dated October 31, 2001, that she "did not fill out the form or review it before [she] signed it."  *See* ***Reply in Support of Susanna Ford's Motion for Certificate of Innocence*** (*Doc. 54*), unmarked exhibit (*Doc. 54-3*) ¶ 8.

[5]Ford argues in the brief in support of her ***Motion for Certificate of Innocence*** (*Doc. 42*) that she told her criminal defense attorney, Stephen G. Ryan, that she had been a United States citizen since 1994, but she did not have the documents to prove it.  ***Brief in Support of Susanna Ford's Motion for Certificate of Innocence*** (*Doc. 43*) at 2.  She contends that Ryan did not investigate her claims or help her find or obtain evidence of her citizenship, and that she acted on his advice in pleading guilty to illegal re-entry.  *Id.* at 2- 3.  If Ford did rely on the advice of Mr. Ryan in entering a guilty plea, this does excuse or justify her repeated statements to Judge Molzen at the plea hearing, under oath, that she was a citizen of Mexico if she knew at the time of the hearing that she was a citizen of the United States.

exhibit (*Doc. 54-3*) at ¶ 7.  These statements are refuted by the sworn affidavit referenced above that Ford signed in connection with her detention by the Border Patrol on October 31, 2001, and also by the sworn testimony of Border Patrol Agent Kevin Jensen at the hearing in this matter on October 31, 2008.  At the hearing, Agent Jensen testified that he processed Ms. Ford after she was detained by the Border Patrol on October 31, 2001, and that his record checks on that date indicated that she was a Mexican citizen.  *See* Transcript of Hearing on October 31, 2008 (*Doc. 62*) at pages 83-86.  Jensen further testified that he prepared Ford's sworn affidavit on October 31, 2001, based on her responses to his questions, and that she signed it.  *Id.* at 88-91.  He further testified that he was able to converse with Ford on that date in English, that he gave Ford her *Miranda* rights and placed her under oath, that he questioned her about her citizenship and that she responded that she was a citizen of Mexico.  *Id.*  at 87-92.  In addition, he testified that Ford understood her rights on that date, fully comprehended English and said nothing about being a United States citizen.  *Id.* at 88, 92.

The Court also finds that Ford did not act affirmatively to obtain an adjudication of her derivative citizenship until after her conviction for illegal re-entry.   Border Patrol Agent Willie K. Stone testified at the hearing on October 31, 2008, that Ford had to file an N-600 petition and have it adjudicated in order to obtain derivative citizenship.  *See* Transcript of Hearing on October 31, 2008 (*Doc. 62*) at pages 109-110, 130-132.[6]  He testified that Ford did not file an N-600 until 2005, that her adjudication of derivative citizenship did not occur until January of 2006, and that her citizenship was retroactive to March 9, 1994, the date she was lawfully admitted to the

---

[6]The N-600 is a form promulgated by the United States Citizenship and Immigration Services of the Department of Homeland Security that is used to apply for a certificate of citizenship.  The current version of the form can be found at http://www.uscis.gov/n-600 .

United States for permanent residence.  *Id.* at 108-109, 111, 130-131.  Ford acknowledged during her testimony at the hearing that she contacted federal immigration authorities on her own initiative and filed an N-600 petition while she was incarcerated on her federal conviction, and that she did not receive a certificate of citizenship until January of 2006.  *Id.* at 31-35, 69-72.  Consistent with this, Agent Stone testified at the hearing that there was nothing in Ms. Ford's immigration file in 2001, indicating that she was a United States citizen at that time.  *Id.* at 102-104, 111.

There is a paucity of case law interpreting the requirement in 28 U.S.C. § 2513(a)(2) that a person seeking a certificate of innocence  prove "he [or she] did not by misconduct or neglect cause or bring about his [or her] own prosecution."  However, the United States Court of Appeals for the Seventh Circuit has held that "before the petitioner [for a certificate of innocence] can be said to have caused or brought about his prosecution within the meaning of section 2513(a)(2), he must have acted or failed to act in such a way as to mislead the authorities into thinking he had committed an offense."  *Betts v. United States*, 10 F.3d 1278, 1285 (7th Cir. 1993).  Examples of qualifying conduct given by the court in *Betts* include falsely confessing to a crime or intentionally withholding exculpatory evidence.  *Id.*  The court explained its use of these examples by stating:

> In these circumstances, a defendant has it within his means to avoid prosecution but elects not do to so, instead acting in such a way as to ensure it.  In that sense, he is responsible for his own prosecution and deserves no compensation for his incarceration. The relevant conduct need not always be intentional-thus, the statue's reference to "neglect" as well as "misconduct."  Nonetheless, there must be either an affirmative act or an omission by the petitioner that misleads the authorities as to his culpability.

*Id.*

Here the Court finds that Ford's misconduct or neglect caused or brought about her prosecution for illegal re-entry.  First, during her removal proceedings in 1999, Ford failed to apply

for relief from removal and she waived the right to appeal the removal order entered by the immigration judge, resulting in her deportation to Mexico.  Second, at the time of her detention by the Border Patrol on October 31, 2001, she affirmatively represented to Agent Jensen, while under oath, that she was a citizen of Mexico.[7]  Third, she withheld from Agent Jensen her belief that she was a citizen of the United States.  Fourth, at her plea hearing on June 10, 2002, she twice affirmatively represented to Magistrate Judge Molzen, while under oath, that she was a citizen of Mexico and withheld from Judge Molzen her belief that she was a citizen of the United States.  Fifth, the evidence at the hearing showed that Ford did not act affirmatively to obtain an adjudication of her derivative citizenship until *after* her conviction for illegal re-entry.  These acts and omissions by Ford misled the prosecution and the Court into believing that she was a Mexican citizen, rather than a United States citizen, and thereby caused or brought about her arrest and prosecution for the crime of illegal re-entry.

### *Conclusion*

For the reasons set forth above, the Court concludes that Ford has failed to prove that she "did not by misconduct or neglect cause or bring about [her] own prosecution" which is required for issuance of a certificate of innocence pursuant to 28 U.S.C. § 2513(a)(2).  Therefore, the Court recommends that her ***Motion for Certificate of Innocence*** (*Doc. 42*) be **DENIED**.  Additionally, the Court recommends that Ford's duplicate ***Motion for Certificate of Innocence*** (*Doc.* 13), filed in Case No. CIV 07-1278 JC/LAM on May 6, 2008, be **DENIED as moot**.

---

[7]Ford's failure on October 31, 2001, to review her affidavit before she signed it was additional culpable conduct that contributed to her arrest and prosecution.  *See **Reply in Support of Susanna Ford's Motion for Certificate of Innocence** (Doc. 54), unmarked exhibit (Doc. 54-3)* ¶ 8.

## RECOMMENDED DISPOSITION

The Court recommends that ***Susanna Ford's Motion for Certificate of Innocence*** (*Doc. 42*) be **DENIED**.   The Court further recommends that Ford's duplicate motion for certificate of innocence (*Doc.* 13), filed in Case No. CIV 07-1278 JC/LAM on May 6, 2008, be **DENIED as moot**.

*Lourdes a. Martinez*
_____
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**

9